(No. 7162.   February 8, 1945.)

KENNETH W. NASH, Respondent, v. J. H. BERTRAM, Appellant.

[155 Pac. (2d) 603.]

James & James for appellant.

Frawley & Barnes and Harry Keyser for respondent.

AILSHIE, C.J.—This is an action in equity for an accounting on contract of employment.

Appellant, fifty-two years of age, has been a mechanic and machinist, since he was sixteen years old. In the spring of 1940, at Boise, he set up the business of operating a machine shop, which was located on the rear of his residence lot. Appellant did all the work in his shop, up to July, 1941, when he employed his two boys and one man part time. He invented a system of re-conditioning Caterpillar and Bosch fuel injection pumps. From August, '41, to April, '42, appellant "averaged 12 to 14 hours a day"— "seven days a week"; in September or October, 1942, he was fully equipped to "turn out any specified amount of work." In February, '43, he had about $7,000 worth of equipment, consisting of machines and tools.

For twenty-five years respondent had been an accountant. At the time of the trial he was employed in general auditing work as a certified public accountant. Nash and Bertram are brothers-in-law. At Hermiston, Oregon, in the spring of 1941 appellant first contacted respondent with reference to furthering the business of re-conditioning Diesel pumps and valves. In July of that year, it was orally agreed between the parties, that respondent should compose, write and mail to various machinery companies,

contractors, municipalities, other concerns, and individuals, letters explaining appellant's business and soliciting patronage. Appellant's proposition was on a 25% commission basis to respondent, 75% to appellant. Nash started to do this work about July 26th. After October 5th the basis was changed to "forty and sixty",—"forty per cent of the net". December 11, '41, the following written agreement was entered into:

"This Agreement made and entered into this 11th day of Dec. 1941 between J. H. Bertram of Boise and Kenneth W. Nash of Boise, Idaho covering the business of reconditioning of diesel fuel pumps and valves.

It is understood and agreed that the net profits of the business will be divided as follows: 60% of the net profits of J. H. Bertram and 40% to Kenneth W. Nash, and to arrive at net profits all necessary and regular expenses of the business to be deducted first, the balance split as aforesaid.

It is understood and agreed that if this business is let out on a royalty basis then the income from the royalties shall be split on the same basis as above, with this exception—if there be any down payment, a cash deposit, then this cash deposit shall be split on the basis of 75% to J. H. Bertram and 25% to Kenneth W. Nash, and the subsequent royalties at 60% and 40%.

It is understood and agreed that this contract is of effect since July 1941 but the agreement had not been set to writing until now.

Witness our hands and seals this 11th day of Dec. 1941.

J. H. Bertram<br>
Kenneth W. Nash."

Nash wrote individual letters "to counties, highway districts, and some cities". He contacted "some two thousand different firms in the country" and "business was received from twenty-five different states other than Utah, Idaho, and Oregon". Twenty-seven hundred to twenty-nine hundred letters were mailed out by respondent. Beside writing letters, respondent made some trips alone and some with appellant. The last of the letters was written

approximately April 8, 1942. Settlements were made between the parties December 18, 1941, February 12th, March 17th, and April 14, 1942, respectively.

June 22, 1942, respondent received a registered letter from appellant, advising him of the termination of "all agreements existing either oral or written, between J. H. Bertram and K. W. Nash". The business between the parties, as found by the court, is:

"That the joint business involved in and settled for in the four settlements had between the parties aggregated $4,069.40, leaving a balance of joint business as to which no settlement has been had in the sum of $6,365.39; that plaintiff's share or 40% thereof is $2,546.16; that deductible expenses from April 15, 1942, the date of their last settlement, to and including June 22, 1942, amount to $323.62, to which must be added the sum of $125.00 admittedly paid to E. B. Smith as attorney's fees in connection with the Southeastern Machinery Company contract, making a total of deductible expense in the sum of $448.62, 40% of which, or $179.45 is chargeable against plaintiff, leaving a balance due and unpaid to plaintiff in the sum of $2,366.71."

There were royalty contracts—the Automotive Products Co. of Portland, Oregon, represented by George W. Ohler, and the Southeastern Machine Co. of Columbia, S. C., represented by Mr. Patterson; they were two of the companies to whom circular letters had been mailed. Down payments amounting to $2600 were made on these contracts ($100 on the Ohler contract and $2500 paid on the S. E. Machine Co. contract.) Respondent and appellant disagreed as to the percentage allotment of these payments, Nash contending that he should have 40% of "advance royalties"; Bertram's contention being, that respondent was entitled to only 25% in a down payment.

The cause was tried to the court. The court found that the contract was one of employment and not a partnership; that, under the contract, appellant had the right, at any time, to discharge respondent and terminate the contract. The evidence supports the finding, that Nash and Bertram settled the royalty payments on the basis of 25% to Nash and 75% to Bertram at the time of their settlement of April 15, 1942, Nash receiving a check for $650. Notwithstanding the fact, that the court found that they

had settled on that basis and should be bound by it, in some way or other he included the 40% of these royalty payments in his judgment against Bertram; and it has been conceded by both parties to the contract, that the royalty payments were "inadvertently figured twice in the Court's calculations"; therefore, the sum of $1,040 (or 40% of the $2,600) should be deducted from the judgment, leaving the sum of $1,326.71 due. From the judgment as entered by the court, with interest at 6% and costs, defendant appeals.

Appellant makes fifteen assignments of error, all of which are directed to two separate subjects: First, he complains of the refusal of the court to adopt a series of findings which he submitted; and, secondly, he assigns as error the court's making certain findings with reference to the nature and scope of the contract and particularly with regard to amounts due thereunder.

It is thought unnecessary to attempt to discuss these separately in detail, since we have reached the conclusion, that there was no error in the ruling of the court, either in rejecting the findings proposed by appellant or making the findings reached by the court. It is obvious, however, that the findings and judgment of the court duplicated the commission on the $2500 and $100 royalty advances (made by the Southeastern Machine Co. and Mr. Ohler, respectively); and that the judgment should be reduced in the sum of $1,040 as admitted by both parties.

It has been suggested in the brief and was argued orally that, notwithstanding the duplication of the $1,040 charge, it should be allowed to stand because of the fact, that appellant realized more than that on the repeat and follow-up orders received as a result of respondent's publicity campaign and which were realized on by appellant subsequent to the cancellation of the contract, June 22, 1942. This contention can not be sustained for the reason that it was not submitted to the trial court; hence, that issue is not properly before us. If there be any merit in the contention, that appellant is entitled to further commission, that will be a matter for future consideration; it can not be properly passed upon on this appeal. It appears, however, that the court allowed respondent commissions for all repeat and follow-up orders made prior to the termination of the cancellation of the contract.

The judgment will therefore be modified by striking therefrom the sum of $1,040 and affirmed as to the balance, with costs of appeal taxed equally between the parties.

Budge, Givens, Holden, and Miller, JJ., concur.